Zoë Dolan

www.zoedolan.com
zdolan@gmail.com

Attorney At Law
Admitted NY & CA
(347) 301-5180

154 Grand Street
New York, NY 10013

April 10, 2018

Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Cooper* (Sharod Liburd)
17-cr-296 (PKC)

*Motion to Right a Wrong and for* Franks *and* Riley *Hearings*

Dear Judge Chen:

Sharod Liburd, whom I represent pursuant to the Criminal Justice Act ("CJA"), submits this letter as a motion to right a wrong and suppress the data seized pursuant to an overbroad warrant for a Facebook account, and for hearings to determine the extent of government malfeasance in securing the warrant.

I. A Warrant Beyond All Expectations

A. Background – Complaint and Indictments

Sharod was initially arrested and arraigned on May 24, 2017 with two co-defendants – Tysheen Cooper and Gabriale Herbert – on a complaint (the "Complaint") in a separately docketed case. *See United States v. Cooper*, et al, 17-cr-296-ILG, docket entry no. 1. The Complaint alleged a Hobbs Act robbery charge under 18 U.S.C. § 1951 and a firearm charge in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Sharod, Tysheen and Gabriale were subsequently charged in an indictment (the "Indictment") charging conspiracy and substantive counts for the alleged Hobbs Act robbery and the alleged firearm offense under both subparagraphs § 924(c)(1)(A)(i) and (ii). *See Cooper*, 17-cr-296-ILG, docket entry no. 17.

Over four months after arraignment on the Complaint, Sharod was included in the superseding indictment now before the Court (the "Superseding Indictment") – along with

Tysheen, Gabriel, Michael Liburd and Maurice Washington. Docket entry no. 32. The gravamen of the Superseding Indictment is a "West End Enterprise" racketeering conspiracy with related gun and murder-related charges, however, *no new charge has been brought against Sharod*. Sharod is *not* named in the first nine counts: racketeering conspiracy (count one), unlawful use of a firearm in relation to the racketeering conspiracy (count two), conspiracy to commit murder in-aid-of racketeering – rival gang members (count three), conspiracy to commit murder in air of racketeering – Antwon Flowers (count four), murder in-aid-of racketeering – Antwon Flowers (count five), causing the death of Antwon Flowers through use of a firearm (count six), obstruction of justice (count seven), attempt to prevent testimony (count eight), or attempt to obstruct an official proceeding (count nine).

The Superseding Indictment *does* include Sharod as a "member" of the alleged racketeering enterprise – just not one alleged to have committed any crime or act in furtherance of the alleged racketeering enterprise or conspiracy. (I will return to this feature of the prosecution in the bootstrapping analysis below.)

B. The Facebook Warrant Application

A little over a month after lodging the Superseding Indictment, the government submitted an affidavit from Federal Bureau of Investigation ("FBI") Special Agent ("SA") Gregory Kies applying for a warrant from the Honorable Robert M. Levy to authorize the seizure and search of data comprising Sharod's Facebook account. *See* Affidavit of SA Kies ("Kies Aff."), attached as Exhibit A.

In his affidavit, SA Kies stated that Tysheen, Michael, Maurice and Sharod "are members of the West Enterprise, a gang composed of individuals residing in and around the Sea Rise Apartments, the Gravesend Houses and Surfside Gardens, also known as the 'Mermaid Houses,' apartment complexes located in the western end of the Coney Island neighborhood of Brooklyn, New York." Kies. Aff at ¶ 5. SA Kies then proceeded to lead Judge Levy to think that the series of factual arguments that the affidavit went on to set forth reflected publicly accessible material: "Law enforcement have reviewed the *public* Facebook page of [the target account]. . . . The *publicly* available photographs on the *public* Facebook page of the [the target account]…" *Id.* at ¶ 7 (emphasis supplied). (As I will explain below, this characterization misrepresented the truth.)

With regard to factual allegations concerning the target account, SA Kies discussed three condolence posts of Sharod's relating to the allegedly gang-related death of Shameek Miller; a post that, in SA Kies's estimation, demonstrated an association between Sharod and

Tysheen; two "messages"[1] that allegedly showed an association between Sharod and the "West End Enterprise"; and a status update by Sharod stating that he "[k]eeps protection on [him] everywhere [he] go[es] 100[%]." Kies aff. at ¶¶ 8-26.

C. The Warrant

Judge Levy issued a warrant, attached as Exhibit B, granting the warrant application. In an attachment section entitled "Information to be disclosed by Facebook" (the "Disclosure Section"), the warrant required Facebook to disclose virtually all – if not all – data associated with the target account, without limitation:

> (a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;
>
> (b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;
>
> (c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;
>
> (d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, *including the friends' Facebook user identification numbers*; groups and networks of which the user is a member, *including the groups' Facebook group identification numbers; future and past event postings*; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;
>
> (e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;
>
> (f) All "check ins" and other location information;
>
> (g) All IP logs, including all records of the IP addresses that logged into the account;
>
> (h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

[1] These entries appear to be status updates (which each received a number of likes from Facebook friends) – not private "messages." *See* Kies Aff. at ¶¶ 20-22.

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(1) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook *posts* and activities, and all records showing which Facebook users have been blocked by the account; and

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts w1th support services and records of actions taken.

Exhibit B (emphasis supplied).

In a subsequent section entitled "Information to be seized by the government" (the "Info to be Seized Section"), the warrant states, "All information described [in the Disclosure Section] that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 1951, 1962(c) and 1962(d) involving SHAROD LIBURD, TYSHEEN COOPER, MICHAEL LIBURD, GABRIALE HERBERT and MARUICE WASHINGTON since January 16, 2016…:

(a) Evidence tending to prove the existence of the West End Enterprise;

(b) Communications among members and associates of the West End Enterprise, including communications pertaining to the crimes committed in furtherance of the West End Enterprise;

(c) Evidence regarding a Hobbs Act robbery and Hobbs Act robbery conspiracy committed by TYSHEEN COOPER, SHAROD LIBURD and GABRIALE HERBERT on or about May 24, 2017, including communications in furtherance of the robbery;

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;[2] and

(f) The identity of the person(s) who created or used the user ID; including records that help reveal the whereabouts of such person(s).

Exhibit B.

The warrant ends there. No further direction – for example, how any limitations arguably inherent in the Info to Be Seized Section might have been enforced – is provided.

D. The Defense Begins to See a Problem

As the Court will recall, in my March 15, 2018 letter to Your Honor, *see* docket entry no. 69, Sharod objected to the privacy protocols that had been set, at the government's request, requiring me to pore over 28,401 pages of the Facebook return and redact personal information – such as a social security number or the like.[3] I objected, expressing concern about the government divulging so much of Sharod's life otherwise through the discovery process – as he is not charged in any overarching crime with the new defendants in the Superseding Indictment; the warrant and resulting production are overbroad; and the onus of redaction would be unduly burdensome and improperly imposed on the defense. *Id.*

II. Hallowed Constitutional Principles

Under the Fourth Amendment to the United States Constitution:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

[2] Establishing precedent that would embrace this aspect of the warrant should disturb any human being in our age. *See*, e.g., pending Facebook U.S. Patent applications discussed at https://twitter.com/jashkenas/status/981672970098589696 (last visited April 9, 2018).

[3] I am uncertain what material, exactly, I am being asked to assume responsibility over.

U.S. Const. amend. IV. The Fourth Amendment "safeguard[s] the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Court of S.F.,* 387 U.S. 523, 528 (1967).

Although applications of the Fourth Amendment evolve with new technology, the principles that motivated its passage are timeless. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin,* 720 F .3d 436, 445 (2d Cir. 2013). And understandably so: general warrants allowed "wide-ranging exploratory searches," *Maryland v. Garrison,* 480 U.S. 79, 84 (1987), and gave the government "'unbridled discretion to rummage at will among a person's private effects," *Arizona v. Gant,* 556 U.S. 332, 345 (2009).

To "prevent general searches," and to ensure "that the search will be carefully tailored to its justifications," the particularity requirement "limit[s] the authorization to search to the specific areas and things for which there is probable cause to search." *Garrison,* 480 U.S. at 84. "A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *Galpin,* 720 F.3d at 446 (citation and quotation marks omitted). To satisfy the particularity requirement, the warrant must, among other things, "specify the items to be seized *by their relation to the designated crimes*." *Id.* (citations and internal quotation marks omitted) (emphasis supplied).

"The dawn of the Information Age has only heightened these concerns." *United States v. Cioffi*, 668 F. Supp. 2d 385, 391 (E.D.N.Y. 2009). Digital data can reveal, with "breathtaking quality and quantity," a "highly detailed profile, not simply of where we go, but by easy inference, of our associations political, religious, amicable and amorous, to name only a few – and of the pattern of our professional and avocational pursuits." *People v. Weaver,* 12 N.Y.3d 433, 441-42 (2009); *accord United States v. Jones,* 132 S. Ct. 945, 955-56 (2012) (Sotomayor, J., concurring) (a person's digital information "reflects a wealth of detail about her familial, political, professional, religious, and sexual associations"). As a result, searches of a digital home "implicate privacy concerns far beyond those implicated by the search" of other physical property. *Riley v. California,* 134 S. Ct. 2473, 2488-89 (2014).

III. The Warrant and Seizure Are Odious.

Any reasonable person would look at the vortex of information that the warrant required Facebook to disclose and wonder what relationship most of the material sought could possibly have with the government's investigation.[4] Consider, for instance, this gem:

---

[4] This concern has only been heightened for Americans in the wake of recent Facebook privacy breeches that have made headlines – and appear to be increasing in scope. Indeed, CEO Mark Zuckerberg is testifying before Congress on these matters as I complete this submission. *See*, e.g., https://www.washingtonpost.com/news/the-

"*All* other records of communications and messages made or received by the user, *including all private messages*, chat history, video calling history, and pending 'Friend' requests" (emphasis supplied). And then ponder this one: "All information about the user's access and use of Facebook Marketplace." And this one: "The types of service utilized by the user."

Such a scorched earth approach is, it should go without having to say, precisely the scourge that the Fourth Amendment to our Constitution aspires to protect against. The warrant here invites law enforcement to romp through every aspect of Sharod's personal life – as well as the personal lives of anyone he is friends with, in at least some way – and then keep this trove of data without regard to whether the government – let alone a codefendant – should have it. Most of the data the warrant encompassed simply bears no "relation to the designated crimes" – or, for that matter, any crime whatsoever.

Perhaps even more troubling is the government's use of the Superseding Indictment to bootstrap the warrant into relevance. The Superseding Indictment was filed *before* the warrant application, thereby transforming the seizure and search into a self-justifying fishing expedition in search of a racketeering charge. Moreover, the Info to Be Seized Section does *not* reference any § 924(c) charge, but, rather, focuses exclusively on Hobbs Act and racketeering charges. This license to engage in "exploratory rummaging"[5] for, in effect, "'evidence of *a* crime,' that is to say, any crime,"[6] is not permitted.

Accordingly, even if probable cause could be established for the lion's share of private data that the government got its hands on – and that standard cannot be met[7] [8] – the Fourth Amendment abhors such unbridled discretion.

IV. *Franks* and *Riley* Hearings Are In Order.

As the Supreme Court of the United States held in *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), where the defendant makes a preliminary showing that a false statement

---

switch/wp/2018/04/10/mark-zuckerberg-facebook-hearing-congress-testimony/?utm_term=.4a53db627473.

[5] *Coolidge v. New Hampshire*, 403 U.S. 332, 467 (1971).

[6] *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992).

[7] Of all the various factual arguments SA Kies brought to Judge Levy's attention in pursuit of the warrant, none establishes any potential connection between Sharod and any pending charge in the Superseding Indictment – other than guilt by association, as SA Kies stated throughout his affidavit.

[8] I do not further address the §924(c) charge because, as mentioned above, it is not included in the warrant.

knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held. "A false statement is material when the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding." *United States v. Martin*, 426 F.3d 68, 73 (2d Cir. 2005) (internal quotations omitted). The ultimate question is whether, absent the erroneous or misleading information, probable cause for the authorization remains. *See id.* at 73-74.

The images from Sharod's alleged Facebook account contained in SA Kies' Aff. indicate a privacy setting for friends only.[9] *See*, e.g., image for Kies Aff. at ¶ 10 (arrow added):




In this manner, SA Kies misled Judge Levy into accepting a lynchpin on which the warrant application depends: that the images it contains had been obtained because they were "public." Materiality speaks for itself in this instance because, without those posts, the warrant application lacks any substance.

A hearing also seems necessary to understand what appears to be a potential violation under *Riley*, 134 S. Ct. 2473, in which the Supreme Court held that a search incident to arrest may not include digital data on a phone in the absence of a warrant. If the cracked screen in the images contained in the Kies Aff. reflect Sharod's phone, and if those screen captures were obtained during a search incident to arrest and without a warrant or

[9] The defense assumes everyone's familiarity with the interface of Facebook. *See* fn. 4, *supra*.

authorization *specific to any permissioned Facebook app from which the images may have been access accessed*, then *Riley* would provide another call for suppression.

> In 1926, Learned Hand observed . . . that it is "a totally different thing to search a man's pockets and use against him what they contain, from ransacking his house for everything which may incriminate him." *United States* v. *Kirschenblatt*, 16 F. 2d 202, 203 (CA2). If his pockets contain a cell phone, however, that is no longer true. Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form – unless the phone is.

*Riley*, 134 S. Ct. at 2489-91.

V. Abeyance Request

As difficult as striking the correct balance between law enforcement's public mandate and the sacred provisions of the Fourth Amendment may be, the fundamentals undergirding our way of life and Constitutional principles compel us to try. The Ninth Circuit, for example, has formulated an approach that seeks to respect the competing interests at work:

> **1**. Magistrates should insist that the government waive reliance upon the plain view doctrine in digital evidence cases.
>
> **2**. Segregation and redaction must be either done by specialized personnel or an independent third party. If the segregation is to be done by government computer personnel, it must agree in the warrant application that the computer personnel will not disclose to the investigators any information other than that which is the target of the warrant.
>
> **3**. Warrants and subpoenas must disclose the actual risks of destruction of information as well as prior efforts to seize that information in other judicial fora.
>
> **4**. The government's search protocol must be designed to uncover only the information for which it has probable cause, and only that information may be examined by the case agents.
>
> **5**. The government must destroy or, if the recipient may lawfully possess it, return non-responsive data, keeping the issuing magistrate informed about when it has done so and what it has kept.

*United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1006 (9th Cir. 2009) (internal citations omitted).

Because such measures could potentially obviate significant expenditures of defense attorney time, in the event that the instant motions fail, the defense intends to pursue a temporary restraining order protecting CJA funds from expenditure on activities that may otherwise comprise prosecutorial responsibilities. The unfortunate reality I face is one that any CJA practitioner must contend with: even if I could assume the availability of funds for all aspects of a representation that I determine are necessary – and I cannot[10] – the CJA system is in a nationwide crisis that has imperiled the Sixth Amendment right to counsel in federal court. *See generally*, 2017 Report of the Ad Hoc Committee to Review the Criminal Justice Act, attached as Exhibit C.

Accordingly, the defense would request an abeyance of the objected-to protocols pending the outcome of any such further litigation.

*

The Court's consideration of this submission is appreciated.

Sincerely,

s/
Zoë Dolan

Cc: All counsel via ECF

[10] *See* the opening and, where applicable, reply briefs in these Ninth Circuit cases: *United States v. Anguiano*, 16-50448; *United States v. Choi*, 17-50023; and *United States v. Doyle*, 17-50001. *See also* "Judges Run Amok: An Exposé," available at https://medium.com/@zoedolan/judges-run-amok-an-expos%C3%A9-ac2e037ee469; *Caracappa v. United States*, 2013 U.S. Dist. LEXIS 107616 (E.D.N.Y. July 12, 2013).